# No. **13-57021**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DANIEL SANDERS, CO-TRUSTEE OF THE DS/KSL SANDERS FAMILY TRUST UDT DATED APRIL 28, 1998, AND KAREN L. SANDERS, CO-TRUSTEE OF THE DS/KSL SANDERS FAMILY TRUST UDT DATED APRIL 28, 1998,

*Plaintiffs and Appellants*,

vs.

SUTTON FUNDING, LLC, THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., AS GRANTOR TRUSTEE OF THE PROTIUM MASTER GRANTOR TRUST, T.D. SERVICE COMPANY, et al.,

*Defendants and Appellees*.

Appeal from denial of preliminary injunction to stay foreclosure sale
Southern District of California, Hon. Janis L. Sammartino, No. 3:10-cv-02142-JLS

## **APPELLANTS' OPENING BRIEF**

EHUD GERSTEN, SBN 236159
Gersten Law Group
3115 Fourth Avenue
San Diego, CA 92103
619-600-0098
egersten@gerstenlaw.com

Attorneys for Appellants

TABLE OF CONTENTS

INTRODUCTION ...................................................................................... 1

JURISDICTIONAL STATEMENT ............................................................ 2

ISSUE PRESENTED................................................................................. 3

STATEMENT OF THE CASE ................................................................... 4

1.    Facts and procedural background ............................................. 4

2.    Hearing on preliminary injunction........................................... 8

3.    Preliminary injunction denied................................................ 10

4.    Proceedings pending the disposition of this appeal............... 11

ARGUMENT............................................................................................ 12

1.    Standard of Review................................................................. 12

2.    The district court erred in taking judicial notice of BNYM's evidence
      regarding its chain of title. ..................................................... 13

3.    BNYM presented no other evidence to counter the Sanders' evidence.
      17

4.    The district court abused its discretion in refusing to issue a preliminary
      injunction. ............................................................................... 19

A.    The Sanders have a likelihood of success on the merits. .................... 20

B.    The loss of their home will cause the Sanders irreparable injury. ....... 24

C.    No public interest is involved in this case. .......................................... 25

i

CONCLUSION ............................................................................................ 25

STATEMENT OF RELATED CASES ...................................................... 27

CERTIFICATE OF COMPLIANCE ........................................................... 27

# TABLE OF AUTHORITIES

Cases

*Alliance for Wild Rockies v. Cottrell*, 622 F.3d 1045 (9th Cir. 2010)........... 19

*Apple, Inc. v. Samsung Elec. Co.*, 2012 U.S. Dist Lexis 92314 (N.D. Cal.
July 3, 2012)............................................................................. 20

*Brown v. California Dep't of Transp.*, 321 F.3d 1217 (9th Cir. 2003) ........ 12

*Caribbean Marine Svces, Inc. v. Baldridge*, 844 F.2d 668 (9th Cir. 1988) .. 24

*Carley Capital Group v. Fireman's Fund Ins. Co.,* 889 F.2d 1126
(D.C.Cir.1989) ........................................................................ 11

*Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund
Ltd.*, 598 F.3d 30 (2nd Cir. 2010) ............................................ 22

*Crosby v. Monroe County*, 394 F.3d 1328 (11th Cir. 2004).......................... 11

*Flexible Lifeline Sys., Inc., v. Precision Lift, Inc.*, 654 F.3d 989 (9th Cir.
2011) ....................................................................................... 12

*FTC v. Enforma Natural Products*, 362 F.3d 1204 (9th Cir. 2004)............. 12

*Gonzalez v. O Centro Espirita Beneficente Uniao do Vegetal,* 546 U.S. 418,
126 S. Ct. 1211 (2006)............................................................. 18

*Harris v. Board of Supervisors, L.A. County*, 366 F.3d 754 (9th Cir. 2004) 12

*Harris v. Copenhaver*, 2012 U.S. Dist. Lexis 154931 (E.D. Cal. Oct. 26,
2012) ....................................................................................... 20

*Hawkins v. Comparet-Cassani*, 251 F.3d 1230 (9th Cir. 2001)................... 12

*Herrera v. Deutsche Bank Nat'l Trust Co.*, 196 Cal.App.4th 1366 (2011).. 16

*Independent Living Ctr. of S. California, Inc. v. Shewry*, 543 F.3d 1050 (9th
Cir. 2008) ................................................................................ 12

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) ........................... 15

*Leiva-Perez v. Holder*, 640 F.3d 962 (9th Cir. 2011)............................... 20, 21

*Macklin v. Deutsche Bank Nat'l Trust Co. (In re Macklin)*, 2012 Bankr. Lexis 6136 (E.D. Cal. Feb. 16, 2012) ........................................................ 11

*Park Village Apt. Tenants Ass'n v. Mortimer Howard Trust,* 636 F.3d 1150 (9th Cir. 2011) ........................................................................................ 24

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) ........... 18

*Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867 (9th Cir. 2000) ................................................................................................ 12

*Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F. 3d 223 (3rd Cir. 2011) 22

*Southwest Voter Registration Educ. Pro. v. Shelley*, 344 F.3d 914 (9th Cir. 2003) ......................................................................................................... 12

*Stormans, Inc. v. Selecky*, 586 F.3d 1109 (9th Cir. 2009) ............................ 25

*Stringfellow v. Concerned Neighbors in Action,* 480 U.S. 370, 107 S. Ct. 1177 (1987) .................................................................................................. 3

*Sundance Land Corp. v. Community First Fed'. Sav. & Loan Assn,* 840 F.2d 653 (9th Cir. 1986) ..................................................................................... 24

*University of Texas v. Camenisch,* 451 U.S. 390 (1981) .............................. 20

*Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7 (2008) 19, 20, 24

**Statutes**

11 U.S.C. § 362 ..................................................................................... 6, 11

28 U.S.C. § 1292(a)(1) ................................................................................ 2

28 U.S.C. § 1367 ........................................................................................ 2

28 U.S.C. § 1441(b) ................................................................................... 2

**Rules**

Federal Rule of Civil Procedure 9(b) .......................................................... 9

Federal Rules of Evidence, rule 201(b) ...................................................... 15

iv

## INTRODUCTION

Daniel Sanders and Karen L. Sanders bought a residence in San Diego County, California in 2007. Like so many American families in recent years, they fell behind on their mortgage payments. They were served with a notice of default and then a notice that their family residence would be sold at a trustee's sale. The Sanders had a securitization report prepared on their property and learned that The Bank of New York Mellon Trust Company, N.A ("BNYM"), which claims to hold the beneficial interest in the Sanders' deed of trust, could not show a clear chain of title. Further investigation revealed a tangled chain of conflicting and fraudulent assignments. The Sanders filed suit in San Diego County Superior Court. They never denied that they owed money on their loan, but argued that they did not owe it to BNYM, which lacked standing to foreclose on their home.

The bank removed the case to federal court. The Sanders sought a preliminary injunction to stop the sale of their residence pending determination of their wrongful foreclosure claims. At the hearing, the district court noted that BNYM had never addressed the issue of the conflicting and fraudulent assignments, and asked defense counsel if he could offer any explanation. He could not. The court noted that the evidence was sufficient to meet the heightened pleading requirements of a fraud

1

claim, and stated that it was "troubled" by BNYM's failure to address the issue. Nonetheless, the court found the Sanders' evidence insufficient to establish a likelihood of success on the merits and refused to issue a preliminary injunction.

The Sanders appeal from the district court's order.

## JURISDICTIONAL STATEMENT

Defendants removed the action from San Diego County Superior Court to the United States District Court for the Southern District of California on the ground that it could have been filed originally in the district court under 28 U.S.C. § 1441(b), as the First Amended Complaint ("FAC") presented federal questions. The FAC alleged violations of the Truth in Lending Act, 15 U.S.C. § 1601 et seq., and Regulation Z. Excerpts of Record (ER) 164 ¶¶ 12-13; ER 191–192 ¶¶ 185–188. Accordingly jurisdiction was conferred by 28 U.S.C. §§ 1331 and 1332. Supplemental jurisdiction exists with respect to remaining claims under 28 U.S.C. § 1367.

This Court has jurisdiction to hear this interlocutory appeal of an order denying a preliminary injunction under 28 U.S.C. § 1292(a)(1). Not all denials of injunctive relief are immediately appealable; a party seeking review also must show that the order will have a "'serious, perhaps irreparable, consequence,' and that the order can be 'effectually challenged'

2

only by immediate appeal." *Stringfellow v. Concerned Neighbors in Action,* 480 U.S. 370, 379, 107 S. Ct. 1177, 1182 (1987). In this case, the Sanders seek injunctive relief to stop BNYM from selling their home. ER 197. A Trustee's Sale was scheduled for December 9, 2013.[1] ER 118–120; 35. Thus, the Sanders face irreparable harm in the loss of their family residence if injunctive relief is not granted.

Plaintiffs Daniel and Karen L. Sanders filed their Notice of Appeal on November 27, 2013. The appeal is from the district court's final order issued November 12, 2013, dissolving the October 18, 2013 temporary restraining order, and denying the Sanders' motion for preliminary injunction enjoining the defendants from conducting a trustee's sale of their property. ER 5–23.

## ISSUE PRESENTED

Responding to the Sanders' motion for a preliminary injunction, BNYM asked the court to take judicial notice of three recorded assignments and of two declarations filed in a prior proceeding. Those documents purport to show that BNYM has an interest in the Sanders' loan, which is the central issue in this lawsuit. The court granted BNYM's request, although it said that it was not taking notice of the truth of the facts asserted.

---

[1] After Karen L. Sanders filed for bankruptcy on December 12, 2013, the sale was postponed until January 9, 2014.

But if the district court did not accept those documents as *true*, then no evidence showed that BNYM held any interest in the loan. The Sanders' evidence raising doubts about BNYM's claim was the only evidence properly before the court. Did the district court therefore abuse its discretion in denying a preliminary injunction?

## STATEMENT OF THE CASE

### 1. Facts and procedural background

Daniel and Karen Sanders bought their home in Vista, California, in July 2007, and executed an Adjustable Rate Note and a Deed of Trust. ER 73–76; 77–102. The Deed of Trust identifies Countrywide Home Loans, Inc., as the lender; Mortgage Electronic Registration Systems, Inc. ("MERS") as the nominee/beneficiary; and Recontrust Company, N.A. as the trustee. ER 77.

On October 8, 2009, a purported assignment of the Note and Deed of Trust from MERS to defendant Sutton Funding, LLC, dated September 10, 2009, was recorded in the San Diego County Recorder's Office. ER 103–104. On September 16, 2009, The Bank of New York Mellon Trust Company, N.A., as Grantor Trustee of the Protium Master Grantor Trust ("BNYM"), acting through its "attorney in fact" Barclays Capital Real Estate, Inc. dba HomEq Servicing ("HomEq"), purportedly substituted

4

defendant T.D. Servicing in place of the original trustee, Recontrust. ER 105–107.

Also on September 16, 2009, defendant T.D. Service Company executed and served a Notice of Default, which was recorded on October 1, 2009. ER 108–110. On January 5, 2010, defendant T.D. Service Company executed and served a Notice of Trustee's Sale stating that plaintiffs' home would be sold on February 3, 2010. ER 111–113.

On February 1, 2010, the Sanders sued in the San Diego County Superior Court alleging wrongful foreclosure and other causes of action. On September 29, 2010, that court granted plaintiffs' motion for a preliminary injunction preventing a trustee's sale of plaintiffs' home pending the outcome of that action. The court found that plaintiffs had properly pleaded and were likely to prevail on their claims for wrongful foreclosure and violation of California Civil Code § 2923.5. ER 114–115. The superior court stated:

> Contrary to Defendant's contentions, Defendant [BNYM] has not provided any evidence of a "clear chain of title" for the note and Deed of Trust. The declaration of Amanda Baladad merely alleges that on some unknown date, an assignment of the note and Deed of Trust was made to Defendant. This allegation lacks foundation.
>
> ER 114–115.

5

On September 29, 2010, the same day the superior court granted plaintiffs' motion for a preliminary injunction, the Sanders filed a verified first amended complaint (FAC), which prompted defendants to remove the action to the district court. ER 156–160. Defendants then noticed a trustee's sale of plaintiffs' home for November 4, 2010. ER 118–120.

On October 29, 2010, plaintiffs moved for a preliminary injunction in the district court, and for a temporary restraining order to prevent the trustee's sale pending hearing of the motion. On November 2, 2010, the district court issued an Order to Show Cause regarding the temporary restraining order and preliminary injunction. ER 154–155.

On November 2, 2010, plaintiffs petitioned for bankruptcy, which stayed the instant action under 11 U.S.C. § 362. On November 10, 2010, the district court denied plaintiffs' motion for a temporary restraining order and preliminary injunction as moot.

On March 25, 2011, MERS purportedly assigned the Sanders' Note and Deed of Trust to defendant BNYM, and recorded the assignment on April 1, 2011. ER 116. This took place 19 months after BNYM began foreclosure proceedings as the purported beneficiary of plaintiffs' Deed of Trust.

6

On November 16, 2011, defendant Sutton Funding purportedly assigned the Sanders' Note and Deed of Trust to defendant BNYM, and recorded the assignment on November 30, 2011. ER 117. This was 26 months after BNYM began foreclosure proceedings as the purported beneficiary of the Sanders Deed of Trust.

On October 3, 2013, after plaintiffs' bankruptcy proceedings had concluded and the stay of this action was ended, Cal-Western Reconveyance LLC ("CWR"), the purported trustee under plaintiffs' Deed of Trust, mailed a Notice of Trustee's Sale dated September 27, 2013, which stated that plaintiffs' home would be sold on October 23, 2013. ER 118.

On October 5, 2013, plaintiffs received a Property Securitization Analysis Report ("PSAR") regarding their loan and deed of trust. ER 121–153. The Report cast doubt on defendants' claimed chain of title, and thus their right to foreclose on the Sanders' home. Among other things, it showed that:

a. MERS' purported assignment of the Deed of Trust to defendant Sutton Funding, LLC recorded October 8, 2009, was signed by Tonya Blechinger and Joyce Nelson as MERS Assistant Secretaries. But they were not MERS employees. They were actually employed by Barclay's (HomEq) and working for the assignee, Sutton Funding. ER 127, 129–131.

7

b. MERS' purported assignment of the Deed of Trust to BNYM recorded April 1, 2011 (ER 116) was signed by John Mallaber on MERS's behalf. But he was actually employed by AMS Servicing, LLC and working for the assignee, BNYM. ER 127, 132–133.

c. The purported assignment of the Deed of Trust to BNYM by defendant Sutton Funding, LLC recorded November 30, 2011 (ER 117) was signed by Nick Matuszewski for Sutton's "Attorney in Fact" DHM Mortgage Servicing. But he was employed by AMS Servicing, LLC and working for the assignee, BNYM. ER 128, 134.

## 2.  Hearing on preliminary injunction

The Sanders moved the district court to enjoin the sale of their house pending determination of their wrongful foreclosure claims. The motion and supporting declaration detailed the evidence of the conflicting and fraudulent assignments. ER 67–72.

The motion for preliminary injunction was heard on November 1, 2013, by the Honorable Janis L. Sammartino. At the hearing, the court first said that its tentative ruling was to deny the request for preliminary injunction. ER 37:22-24. The court noted that the evidence was sufficient to meet the heightened pleading requirements of a fraud claim under Federal

8

Rule of Civil Procedure 9(b). ER 38:25–39:3. The court said that it was "troubled" by the facts and by BNYM's failure to address the issue of the conflicting and apparently fraudulent assignments. ER 39:3-4. Yet the court was not convinced that the evidence sufficed to establish a likelihood of success on the merits. ER 39:5-6.

The Sanders' counsel pointed out that they never claimed that they did not owe a mortgage debt, but rather that, although they may owe a mortgage debt to someone, they did *not owe it to these particular defendants* because they appeared to have committed fraud, as shown by the questionable assignments. BNYM had failed to show that it has standing to claim anything, much less the Sanders' home. ER 58:4-9.

Counsel argued that the assignments were defective for two reasons. First, if MERS assigned the Deed of Trust to Sutton in 2009, it could not later assign the same interest to BNYM in 2011. ER 41:10–42:23. Second, those persons who executed the assignments were actually working for the assignees. ER 57:10–58:3.

BNYM never opposed or disputed this evidence. Its counsel argued that Sutton had transferred its interest directly to BNYM in November 2011 (ER 53:8-9); therefore, the April 2011 assignment from MERS to BNYM was irrelevant because the November 2011 assignment from Sutton to

9

BNYM cured any break in the chain of title. ER 44:6-10. When the court pointed out that BNYM had failed to address the issue in its opposition papers (ER 52:17-20), and questioned BNYM's counsel about the assignments, counsel said that he could not explain the apparently contradictory and/or defective assignments. ER 52:25; 53:17; 54:8-12.

The Sanders' counsel argued that the totality of the evidence was on the Sanders' side because they had produced evidence that showed the recorded assignments to be defective, while BNYM failed to offer any evidence to refute the Sanders' proffered evidence. ER 44:17-20.

Judge Sammartino took the matter under submission. ER 59:1-7.

## 3. Preliminary injunction denied

On November 12, 2013, the district court entered an order granting BNYM's request for judicial notice, dissolving its October 18, 2013 temporary restraining order, and denying the Sanders' request for a preliminary injunction. ER 5–23.

On November 12, 2013, non-party CWR, acting as trustee, rescheduled the trustee's sale of plaintiffs' property for December 9, 2013. ER 118–120. On November 27, 2013, the Sanders filed their Notice of Appeal from the Order denying their motion for preliminary injunction. ER 1–4.

10

On November 29, 2013, the Sanders sought an emergency stay pending appeal. ER 67–72. On December 2, 2013, the district court denied the stay. ER 24–28.[2]

### 4. Proceedings pending the disposition of this appeal

Karen L. Sanders filed for Chapter 13 bankruptcy protection on December 9, 2013. Daniel Sanders did not join in the bankruptcy petition. This Court still has jurisdiction to hear the appeal, as the automatic stay imposed by section 362 of the Bankruptcy Code (11 U.S.C. § 362) operates to stay only pending litigation—including appellate proceedings—brought *against* the debtor. The automatic stay does not apply to an appeal from an order or judgment when the debtor initiated the underlying action to recover on a claim against another party. *Crosby v. Monroe County*, 394 F.3d 1328, 1332, n. 2 (11th Cir. 2004); *Carley Capital Group v. Fireman's Fund Ins. Co.,* 889 F.2d 1126, 1127 (D.C. Cir. 1989); *Macklin v. Deutsche Bank Nat'l Trust Co. (In re Macklin)*, 2012 Bankr. Lexis 6136 (E.D. Cal. Feb. 16, 2012).

---

[2] On December 6, 2013, this Court denied appellants' emergency motion to stay the foreclosure sale and stay further district court proceedings pending this appeal.

11

**ARGUMENT**

**1.  Standard of Review**

A district court's decision regarding preliminary injunctive relief is subject to limited review. *See Flexible Lifeline Sys., Inc., v. Precision Lift, Inc.*, 654 F.3d 989, 993-94 (9th Cir. 2011) (per curiam); *Harris v. Board of Supervisors, L.A. County*, 366 F.3d 754, 760 (9th Cir. 2004) ("limited and deferential"); *Southwest Voter Registration Educ. Pro. v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003) (en banc) (same); *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 874 (9th Cir. 2000). The court will be reversed only if it abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact. *See FTC v. Enforma Natural Products*, 362 F.3d 1204, 1211-12 (9th Cir. 2004); *Harris*, 366 F.3d at 760.

A preliminary injunction must be supported by findings of fact, reviewed for clear error. *See Independent Living Ctr. of S. California, Inc. v. Shewry*, 543 F.3d 1050, 1055 (9th Cir. 2008); *Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1239 (9th Cir. 2001). The district court's conclusions of law are reviewed de novo. *See Independent Living Ctr.*, 543 F.3d at 1055; *Brown v. California Dep't of Transp.*, 321 F.3d 1217, 1221 (9th Cir. 2003).

12

## 2.  The district court erred in taking judicial notice of BNYM's evidence regarding its chain of title.

BNYM asked the court to take judicial notice of three purported assignments: the first was from MERS to Sutton Funding (ER 103–104), and the second was from MERS to BNYM (ER 116). Apparently realizing that MERS could not assign the Note and Deed of Trust to BNYM if it had already assigned them to Sutton Funding, Sutton Funding made a third purported assignment to BNYM (ER 117).

The Sanders presented evidence that all three purported assignments were fraudulent because the persons who executed them had no authority to do so. In each case, the person(s) who executed the assignment for the assignor actually worked for the assignee. ER 130–134. The court parsed the evidence in support of these contentions:

> Regarding the Assignment from MERS to Sutton executed on September 10, 2009, the PSAR claims that Joyce Nelson ("Nelson"), one of the signees for MERS, was in fact the Assistant Secretary of Barclays, the attorney in fact of BNYM. (PSAR 11, ECF No. 28-12 [ER 131].) In support of this contention, the PSAR provides an Ohio state court opinion stating that Nelson attested in a 2010 affidavit that she held this title. (*Id.*)

> The PSAR also claims that the second signee, Tonya Blechinger ("Blechinger"), averred that she was a Barclays employee in an official document recorded in Iowa on October 25, 2007. (*Id.* at 10 [ER 130].)

> Regarding the Assignment from MERS to BNYM executed on March 25, 2011, the PSAR claims that John Mallaber

13

> ("Mallaber"), one of the signees for MERS, was allegedly
> employed by Arbor Mortgage Servicing ("AMS"). (*Id.* at 12–13
> [ER 132–133].) AMS purportedly was Barclay's foreclosure
> agent. (*Id.* at 12 [ER 132].) In support of this assertion, the
> PSAR provides a printout of Mallaber's LinkedIn profile,
> which states that Mallaber is a current employee of AMS and
> has worked there since 2007. (*Id.* at 13 [ER 133].) Mallaber's
> profile does not mention that he has ever been employed by
> MERS or Countrywide. (*Id.*) And regarding the Assignment
> from Sutton to BNYM executed on November 30, 2011, the
> PSAR claims that Nick Matuszewski ("Matuszewski")—one of
> the signees for DHM Mortgage Servicing, the attorney in fact
> for Sutton—signed the Assignment "without power of attorney
> or legal representation," thus rendering the Assignment
> ineffective. (*Id.* at 14 [ER 134].)

ER 15:25–16:16.

Just because the two purported assignments to BNYM were recorded
does not conclusively establish that they were effective, or that BNYM is, in
fact, the beneficiary with the right to foreclose. Courts take judicial notice of
public records, but they do *not* take notice of the truth of the matters stated
in those records, which may be disputed. The district court set out the
principles as follows:

> Federal Rule of Evidence 201 provides that "[t]he court may
> judicially notice a fact that is not subject to reasonable dispute
> because it: (1) is generally known within the trial court's
> territorial jurisdiction; or (2) can be accurately and readily
> determined from sources whose accuracy cannot reasonably be
> questioned." "Judicially noticed facts often consist of matters of
> public record." *Botelho v. U.S. Bank, N.A.*, 692 F. Supp. 2d
> 1174, 1178 (N.D. Cal. 2010) (citations omitted); *see also W.
> Fed. Sav. & Loan Ass'n v. Heflin Corp.*, 797 F. Supp. 790, 792
> (N.D. Cal. 1992). While "a court may take judicial notice of the

14

existence of matters of public record, such as a prior order or
decision," it should not, however, take notice of "the truth of
the facts cited therein." *Marsh v. Cnty. of San Diego*, 432 F.
Supp. 2d 1035, 1043 (S.D. Cal. 2006).

ER 9:18-27.

A court may take judicial notice of matters of public record, but may

not take judicial notice of a fact that is "subject to reasonable dispute." Fed.

R. Evid. 201(b). In *Lee v. City of Los Angeles*, 250 F.3d 668, 689-690 (9th

Cir. 2001), Kerry Sanders, a mentally disabled resident of Los Angeles, was

incorrectly identified as a different fugitive who was wanted by the State of

New York. The district court had authority under Rule 201 to take judicial

notice of the *fact* of an extradition hearing, the *fact* that a waiver of

extradition was signed by Kerry Sanders, and the *fact* that Kerry Sanders

purportedly waived his right to challenge his extradition to New York as

Robert Sanders. But the appellate court found that the district court erred in

taking judicial notice of disputed facts stated in public records that had not

yet been proved:

> [Th]e court did more than take judicial notice of *undisputed*
> matters of public record. The court took judicial notice of
> *disputed* facts stated in public records. … Here, the district
> court incorrectly took judicial notice of the validity of Kerry
> Sanders's waiver, which was as yet unproved.

> *Id*. at 690 (emphasis in original).

15

The appellate court in *Lee* concluded that "the district court erred in …

taking judicial notice of disputed matters of fact to support its ruling." *Ibid*.

In this case, the district court did exactly the same thing. It took

judicial notice of the fact that BNYM had validly executed a substitution of

trustee as the holder of the beneficial interest in the Sanders' note and deed

of trust, a fact that had not yet been proved and was actually the central issue

in dispute in the lawsuit.

The rule is the same in California state courts. *Herrera v. Deutsche*

*Bank National Trust Co.*, 196 Cal.App.4th 1366, 1375 (2011). In *Herrera*,

the plaintiffs lost their house to a trustee's sale and then sued to set the sale

aside, claiming that the defendant bank was not the beneficiary of the deed

of trust and that the defendant reconveyance company was not the trustee.

The trial court took judicial notice of a recorded assignment to the bank, and

a recorded substitution of trustee, and granted the defendants' motion for

summary judgment. The appellate court reversed, stating: "Judicial notice of

the recorded documents did not establish that the Bank was the beneficiary

or that CRC was the trustee under the 2003 deed of trust." *Ibid.*

Consistent with this principle, in its November 12, 2013 order

granting BNYM's request for judicial notice of various recorded documents,

16

the district court expressly stated that "the Court does not at this time take notice of the truth of the facts asserted therein." ER 10:11-12.

Nevertheless, despite this disclaimer, the court apparently *did* accept the truth of the recorded assignments and substitutions of trustees. It found that any deficiencies in the assignments and substitutions of trustees recorded in 2009 and 2011 were moot because BNYM was foreclosing on the basis of the documents executed and recorded since October 2012. ER 14:20-26. Moreover, the court found that, under California Civil Code § 2934(a), a new trustee may be substituted simply by executing and recording a substitution acknowledged by the beneficiary under the trust deed. ER 14:27–15:6. The court apparently assumed, without discussion, that BNYM *was then the beneficiary* and executed and recorded a substitution of trustee document in accordance with § 2934(a). Contrary to the most basic black-letter law, and contrary to its own statement, the court simply accepted the judicially noticed documents for the *truth* of the matters they contained.

### 3.  BNYM presented no other evidence to counter the Sanders' evidence.

The burden of proof at the preliminary injunction stage tracks the burdens at trial. Thus, once the moving party has shown a likelihood of

17

success on the merits, the burden shifts to the other party to show a likelihood that its affirmative defense will succeed. *Gonzalez v. O Centro Espirita Beneficente Uniao do Vegetal,* 546 U.S. 418, 429, 126 S. Ct. 1211, 1219 (2006); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1158 (9th Cir. 2007)

The district court pointed out that BNYM had failed to address the allegations of contradictory and fraudulent or defective assignments in its opposition papers, and it questioned BNYM's counsel about these issues. ER 52:17-20. Counsel had nothing to say. ER 52:25; 53:17; 54:8-12. Moreover, BNYM itself made contradictory statements concerning when it allegedly acquired its interest in the Sanders' loan. BNYM asserted in 2010 in the superior court proceeding that it had acquired the Sanders' Note and Deed of Trust through an assignment. ER 114–115. The superior court disagreed and granted a preliminary injunction, stating, "Defendant has not provided any evidence of a 'clear chain of title' for the note and Deed of Trust." ER 115.

Then at the November 11, 2013 hearing on the motion for preliminary injunction, BNYM's counsel stated that it had acquired its interest directly from Sutter in November 2011. ER 53:8-9. Although the first assignment to BNYM was not executed or recorded until 2011, BNYM had been claiming

18

*in 2010* that it owned the Sanders' note. Yet it gave no evidence—then or

now—to support that claim.

### 4. The district court abused its discretion in refusing to issue a preliminary injunction.

Before granting a preliminary injunction, a court must find that: (1)

the plaintiff is likely to succeed on the merits; (2) the plaintiff is likely to

suffer irreparable harm absent a preliminary injunction; (3) the balance of

equities tips in plaintiffs' favor; and (4) the injunction is in the public

interest. *Winter v. Natural Resources Defense Council, Inc.,* 555 U.S. 7, 20

(2008).

*Alliance for Wild Rockies v. Cottrell*, 622 F.3d 1045, 1131-1132 (9th

Cir. 2010), also endorsed the use of a "sliding-scale" alternative test, in

which a preliminary injunction may be issued on either (1) a combination of

probable success on the merits and the possibility of irreparable injury if

injunctive relief is denied; or (2) the likelihood of success such that "serious

questions going to the merits were raised and the balance of hardships tipped

sharply in plaintiff's favor."

The advantage of this sliding-scale test is that it provides flexibility;

the trial court can balance the requirements for a preliminary injunction "so

that a stronger showing of one element may offset a weaker showing of

19

another." For example, a stronger showing of irreparable harm to the plaintiff may offset a lesser showing of likelihood of success on the merits. 632 F.3d at 1131.

The Ninth Circuit has taken the position that *Winter, supra,* "did not alter [the court's] authority to balance the elements of the preliminary injunction test, so long as a certain threshold showing is made on each factor." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011).

## A. The Sanders have a likelihood of success on the merits.

A preliminary injunction is customarily granted on the basis of procedures less formal and evidence less complete than at trial. Therefore, the moving party need not prove his or her case in full at a preliminary injunction hearing. *University of Texas v. Camenisch,* 451 U.S. 390, 395 (1981).

The court applies the same standards when considering a motion for preliminary injunction as are applied in considering a motion for stay or injunction pending appeal. See *Tribal Village of Akutan v. Hodel*, 859 F.2d 662, 663 (9th Cir. 1988); *Harris v. Copenhaver*, 2012 U.S. Dist. Lexis 154931 (E.D. Cal. Oct. 26, 2012); *Apple, Inc. v. Samsung Elec. Co.*, 2012 U.S. Dist Lexis 92314 (N.D. Cal. July 3, 2012).

In the stay context, the court in *Leiva-Perez v. Holder*, *supra*,

discussed the likelihood-of-success factor:

> There is some uncertainty as to the exact degree of likely success that stay petitioners must show, due principally to the fact that courts routinely use different formulations to describe this element of the stay test [Citation.] What is clear, however, is that to justify a stay, *petitioners need not demonstrate that it is more likely than not that they will win* on the merits.

> *Id*., 640 F.3d at 966 (emphasis added).

The court then explained why a less stringent standard is appropriate:

> Such a rule, moreover, makes good sense. A more stringent requirement would either, in essence, put every case in which a stay is requested on an expedited schedule, with the parties required to brief the merits of the case in depth for stay purposes, or would have the court attempting to predict with accuracy the resolution of often-thorny legal issues without adequate briefing and argument. Such pre-adjudication adjudication would defeat the purpose of a stay, which is to give the reviewing court the time to "act responsibly," rather than doling out "justice on the fly."

> *Id*. at 967.

Whatever the minimum quantum of likely success necessary—be it a "reasonable probability" or "fair prospect" or "a substantial case on the merits," or that "serious legal questions are raised"—these formulations are essentially interchangeable, and none of them demand a showing that success is more likely than not. Regardless of how one expresses the requirement, the idea is that, to justify a stay or a preliminary injunction, a

21

petitioner must show simply that he or she has a substantial case for relief on the merits. *Id.*, 640 F.3d at 966.

Other circuits agree that the likelihood-of-success factor does not require proof that success is more likely than not. The Third Circuit has held that a "likelihood" of success does not mean "more likely than not." *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F. 3d 223, 229 (3rd Cir. 2011). The Second Circuit has held that a preliminary injunction may be granted even if it cannot be determined with certainty that the moving party is more likely than not to prevail on the merits if "the costs outweigh the benefits of not granting the injunction." *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2nd Cir. 2010).

Here, the Sanders' counsel argued at the preliminary injunction hearing that they had presented sufficient evidence to show a likelihood of prevailing on the merits. In fact, the totality of the evidence was on the Sanders' side. They had produced evidence that showed the recorded assignments to be defective. BNYM offered nothing in rebuttal. ER 44:17-20.

Yet although the court found that the allegations satisfied Rule 9(b)'s heightened pleading requirements, and would survive a motion to dismiss, it

22

still found these allegations insufficient to establish a likelihood of success on the merits. ER 47:26–48:2. The court stated:

> Because MERS had already purportedly transferred its interest at the time, the MERS to BNYM transfer is invalid and thus irrelevant to this analysis; thus, the allegations concerning Mallaber are unavailing. Regarding the assignment from MERS to Sutton, that Nelson and Blechinger were allegedly employed by Barclays in 2010 and 2007, respectively, does not prove that neither was a MERS employee in 2009. These employment dates are not necessarily contradictory. People frequently change employers, and even careers. And, regarding the assignment from Sutton to BNYM, Plaintiffs provide only the conclusory allegation that Matuszewski did not have the authority to sign for Sutton. Thus, Plaintiffs fail to raise "serious questions" as to BNYM's status as beneficiary of the Note. *Alliance for the Wild Rockies*, 632 F.3d at 1134–35.

ER 17:2-12.

The Sanders produced evidence sufficient to raise a serious question concerning the validity of these assignments. But the court, indulging in speculation about the signators' employment histories, effectively required complete and definitive evidence to prove this contention, without allowing the Sanders any opportunity for discovery. The district court abused its discretion in applying too stringent a standard as to the likelihood-of-success factor. In effect, the court required them to prove their case in full in this "pre-adjudication adjudication" in order to justify a preliminary injunction. The court erred in imposing a much higher standard than merely showing that serious legal questions are raised.

23

In sum, the district court improperly weighed the evidence in considering the key issue of the likelihood of success on the merits. Because the court found no likelihood of success on any of the Sanders' claims, it never reached an analysis of the other requisite factors.

## B. The loss of their home will cause the Sanders irreparable injury.

Plaintiffs seeking preliminary relief must demonstrate that irreparable injury is likely in the absence of an injunction. *Winter v. Natural Resources Defense Council, Inc*., 555 U.S. at 22. Plaintiffs must demonstrate "immediate threatened harm." *Caribbean Marine Services, Inc. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988). A "loss of an interest in real property constitutes an irreparable injury." *Park Village Apt. Tenants Ass'n v. Mortimer Howard Trust,* 636 F.3d 1150, 1159 (9th Cir. 2011) (potential eviction of low-income plaintiff from apartment); *Sundance Land Corp. v. Community First Fed'. Sav. & Loan Assn,* 840 F.2d 653, 661 (9th Cir. 1986) (loss of property through foreclosure).

Here, there was no question that the Sanders would suffer irreparable harm if injunctive relief was not granted: the very same day that the court denied a preliminary injunction, the trustee noticed a new date for the Trustee's Sale of the Sanders' property. Without injunctive relief, the

24

Sanders' home could still be sold before the merits of their claims can be determined.

Moreover, the Sanders and their family would suffer a much more significant injury in losing the family home than any harm BNYM would sustain as a result of simply delaying the trustee's sale. Thus, the balance of equities tips sharply in the Sanders' favor.

## C. No public interest is involved in this case.

When the injunction will affect only the parties and will have no impact on others, the public interest is not a factor for or against granting it. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138-1139 (9th Cir. 2009). Because the dispute is strictly between the parties, the public interest is not a factor here.

## CONCLUSION

The Sanders have shown a reasonable probability that they can prevail on the merits of their underlying claim for wrongful foreclosure. They offered evidence that BNYM lacked standing to foreclose on the Sanders' home because a trail of conflicting, contradictory, and fraudulent assignments could not show that it had clear title to the loan. BNYM

25

produced no evidence to counter the Sanders' claims. The court should not have taken judicial notice of the truth of the documents BNYM produced.

The district court abused its discretion in imposing an impermissibly high standard for demonstrating the likelihood of success on the merits, effectively requiring the Sanders to prove their case in full in order to qualify for injunctive relief. They will suffer irreparable injury if a stay is not granted and the sale of their home is permitted to proceed before the merits of their claims can be determined.

Accordingly, the Sanders request that this Court issue a stay of any sale that might occur if the bankruptcy is lifted, reverse the order of the district court denying their motion for preliminary injunction, and remand the case with directions that a preliminary injunction be issued enjoining sale of the Sanders' property pending full determination of their claims.

Dated: December 26, 2013          Respectfully submitted,

                                  Gersten Law Group

                                  /s/ Ehud Gersten

                                  _____

                                  EHUD GERSTEN
                                  Attorneys for Appellants
                                  Daniel Sanders and Karen L. Sanders

26

**STATEMENT OF RELATED CASES**

(Ninth Circuit Rule 28-2.6)

No other cases in this court are related to this case.

Dated: December 26, 2013


/s/ Ehud Gersten

_____

EHUD GERSTEN
Attorneys for Appellants
Daniel Sanders and Karen L. Sanders


**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Circuit Rule 32-1
for Case Number **13-57021**

I certify that, pursuant to Fed. R. App. P. 32 (a)(7)(C) and Ninth

Circuit Rule 32-1, the attached opening brief is proportionately spaced,

double-spaced, has a serifed typeface (Times New Roman) of 14 points or

more, and contains **5,593** words.


Dated: December 26, 2013


/s/ Ehud Gersten

_____

EHUD GERSTEN
Attorneys for Appellants
Daniel Sanders and Karen L. Sanders

27